**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Angela Castro,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-22-02046-PHX-JAT<br><br>**ORDER** |

  Pending before the Court is Plaintiff Angela Castro's ("Plaintiff") appeal from the Commissioner of the Social Security Administration's ("SSA" or "Defendant") denial of social security disability benefits. (Doc. 1). Plaintiff filed her opening brief on June 25, 2023, (Doc. 18), Defendant responded on September 19, 2023, (Doc. 22), and Plaintiff filed a reply, (Doc. 23). The Court now rules.

**I. BACKGROUND**

  The issues presented in this appeal are the following: (1) whether the ALJ failed to provide specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's subjective symptom testimony and (2) whether the ALJ failed to provide germane reasons for rejecting the medical opinion of Sanford Goldstein, Physical Therapist ("PT"), when determining Plaintiff's residual functional capacity ("RFC").

**  A. Factual Overview**

  Plaintiff filed an application for disability under Title II for Disability Insurance Benefits and under Title XVI for Supplemental Security Income disability benefits on

October 18, 2016. (Doc. 16-3 at 14). In both applications, Plaintiff alleged disability beginning on April 1, 2015. (*Id.*). On the advice of counsel, Plaintiff later amended the alleged onset date to August 25, 2015, based on when she stopped working. (*Id.*).

Both claims were initially denied on March 18, 2017, and upon reconsideration on June 28, 2017. (*Id.*). On April 10, 2019, Plaintiff appeared and testified at a rehearing before an administrative law judge ("ALJ") in Phoenix, Arizona. (*Id.*). On June 13, 2019, the ALJ issued a decision finding that Plaintiff was not disabled. (*Id.* at 24). The SSA Appeals Council denied Plaintiff's Request for Review and adopted the ALJ's decision as the final decision of the Commissioner. (Doc. 18 at 2).

On March 22, 2021, District Court Judge Douglas Rayes reversed the 2019 ALJ decision, holding in relevant part that the ALJ did not provide specific, clear, and convincing reasons for rejecting Plaintiff's symptom testimony and did not provide germane reasons for assigning little weight to the opinion of PT Goldstein. *Castro v. Comm'r Soc. Sec. Admin.*, No. CV-20-00995-PHX-DLR, 2021 WL 1085392, at *2 (D. Ariz. Mar. 20, 2021). The Court remanded for further consideration of these two issues. *Id.*

Following remand, the ALJ issued a new decision on August 3, 2022, once again finding Plaintiff not disabled. (Doc. 17 at 19). Plaintiff appeals that decision, alleging that it is unsupported by substantial evidence. (Doc. 18 at 2).

**B. The SSA's Five-Step Evaluation Process**

To evaluate a claim of disability, the Social Security regulations set forth a five-step sequential process. 20 C.F.R. § 404.1520(a)(4) (2016); *see also Reddick v. Chater*, 157 F.3d 715, 721 (9th Cir. 1998). A finding of "not disabled" at any step in the sequential process will end the inquiry. 20 C.F.R. § 404.1520(a)(4). The claimant bears the burden of proof through the first four steps, but the burden shifts to the Commissioner in the final step. *Reddick*, 157 F.3d at 721. The five steps are as follows.

First, the ALJ determines whether the claimant is "doing substantial gainful activity." 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled.

At step two, if the claimant is not gainfully employed, the ALJ next determines

whether the claimant has a "severe medically determinable physical or mental impairment." *Id.* § 404.1520(a)(4)(ii). To be considered severe, the impairment must "significantly limit[] [the claimant's] physical or mental ability to do basic work activities." *Id.* § 404.1520(c). Basic work activities are the "abilities and aptitudes to do most jobs," such as lifting, carrying, reaching, understanding, carrying out and remembering simple instructions, responding appropriately to co-workers, and dealing with changes in routine. *Id.* § 404.1522(b). Further, the impairment must either have lasted for "a continuous period of at least twelve months," be expected to last for such a period, or be expected "to result in death." *Id.* § 404.1509 (incorporated by reference in 20 C.F.R. § 404.1520(a)(4)(ii)). The "step-two inquiry is a de minimis screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). If the claimant does not have a severe impairment, then the claimant is not disabled.

At step three, having found a severe impairment, the ALJ next determines whether the impairment "meets or equals" one of the impairments listed in the regulations. 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is found disabled without further inquiry. If not, before proceeding to the next step, the ALJ will make a finding regarding the claimant's RFC "based on all the relevant medical and other evidence in [the] case record." *Id.* § 404.1520(e). A claimant's RFC is the most she can still do despite all her impairments, including those that are not severe, and any related symptoms. *Id.* § 404.1545(a)(1).

At step four, the ALJ determines whether, despite the impairments, the claimant can still perform "past relevant work." *Id.* § 404.1520(a)(4)(iv). To make this determination, the ALJ compares the RFC assessment with "the physical and mental demands of [the claimant's] past relevant work." *Id.* § 404.1520(f). If the claimant can still perform the kind of work she previously did, the claimant is not disabled. Otherwise, the ALJ proceeds to the final step.

At the final step, the ALJ determines whether the claimant "can make an adjustment to other work" that exists in the national economy. *Id.* § 404.1520(a)(4)(v). In making this determination, the ALJ considers the claimant's "residual functional capacity" and his

"age, education, and work experience." *Id.* § 404.1520(g)(1). If the claimant can perform other work, he is not disabled. If the claimant cannot perform other work, he will be found disabled.

In evaluating the claimant's disability under this five-step process, the ALJ must consider all evidence in the case record. *See id.* §§ 404.1520(a)(3), 404.1520b. This includes medical opinions, records, self-reported symptoms, and third-party reporting. *See id.* §§ 404.1527, 404.1529; SSR 06-3p, 71 Fed. Reg. 45593-03 (Aug. 9, 2006).

### C. The ALJ's Application of the Five-Step Evaluation Process

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity from the amended alleged onset date of August 25, 2015, to March 8, 2021. (Doc. 17 at 8). The ALJ found that Plaintiff engaged in substantial gainful activity from March 8, 2021, when she began part-time work from home, through the date of the decision. (*Id.*). However, the ALJ denied Plaintiff's motion to amend the alleged onset date to a closed period of disability because he found "no evidence of medical improvement" as it relates to Plaintiff's RFC. (*Id.*).

At step two, the ALJ determined that Plaintiff had the following severe medical impairments: bilateral hip degenerative joint disease, status post bilateral total hip arthroplasty, fibromyalgia, and obesity. (*Id.*).

At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that met or equaled the severity of one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1. (*Id.* at 11). The ALJ determined that Plaintiff had the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except [Plaintiff] can lift and carry 20 pounds occasionally, 10 pounds frequently, stand and walk for 6 hours in an 8-hour day, and sit for 6 hours in an 8-hour day. [Plaintiff] can frequently climb ramps and stairs, but occasionally climb ladders and scaffolds. [Plaintiff] can frequently stoop and kneel, and occasionally crouch and crawl. [Plaintiff] must avoid concentrated exposure to hazards.

(*Id.* at 12).

At step four, the ALJ determined that Plaintiff could still perform past relevant work as a medical assistant, administrative assistant, and medical secretary because these positions do not require performance of activities above Plaintiff's RFC of "light work." (*Id.* at 18). Because Plaintiff could perform her past relevant work, the ALJ concluded she was not disabled. (*Id.*). The ALJ therefore did not consider the fifth step in the evaluation process. *See* 20 C.F.R. § 404.1520(a)(4).

## II.     LEGAL STANDARD

This Court may not set aside a final denial of disability benefits unless the ALJ decision is "based on legal error or not supported by substantial evidence in the record." *Revels v. Berryhill*, 874 F.3d 648, 654 (9th Cir. 2017) (quoting *Benton ex rel. Benton v. Barnhart*, 331 F.3d 1030, 1035 (9th Cir. 2003)). "Substantial evidence is more than a scintilla, but less than a preponderance." *Reddick*, 157 F.3d at 720. In other words, substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support [the ALJ's] conclusion." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 690 (9th Cir. 2009) (quoting *Desrosiers v. Sec'y Health & Human Servs.*, 846 F.2d 573, 576 (9th Cir. 1988)).

"The inquiry here is whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached by the ALJ." *Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). In determining whether there is substantial evidence to support a decision, the Court considers the "record as a whole, weighing both the evidence that supports and the evidence that detracts" from the ALJ's conclusions. *Reddick*, 157 F.3d at 720. "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to draw inferences logically flowing from the evidence." *Gallant*, 753 F.2d at 1453 (internal citation omitted); *see also Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). This is because "[t]he trier of fact and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney v.*

- 5 -

1 *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992); *see Young v. Sullivan*, 911 F.2d 180, 184 (9th Cir. 1990).

The ALJ is responsible for resolving conflicts in medical testimony, determining credibility, and resolving ambiguities. *See Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995). Thus, if on the whole record before the Court, substantial evidence supports the ALJ's decision and the decision is free from legal error, the Court must affirm it. *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. § 405(g) (2012). On the other hand, the Court "may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (internal quotation marks and citation omitted).

The Court is not charged with reviewing the evidence and making its own judgment as to whether Plaintiff is or is not disabled. *See Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). Rather, the Court's inquiry is constrained to the reasons asserted by the ALJ and the evidence relied upon in support of those reasons. *See id.*

**III.   DISCUSSION**

    **A. Plaintiff's Subjective Testimony**

Plaintiff argues that the ALJ erred by failing to provide specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony. (Doc. 18 at 12).

First, Plaintiff argues that ALJ's finding of "adequate pain relief" does not follow from the medical evidence. (*Id.* at 14). Plaintiff asserts that the ALJ relied on exams that do not correlate to her claim of severe pain, because the exams focus on "an inability to sit, stand and walk for extended periods due to gait abnormalities," not "chronic pain that increases the longer she persists at an activity." (*Id.* at 16). Additionally, Plaintiff emphasizes that the reports relied on by the ALJ contain evidence that Plaintiff consistently complained of increased pain. (*Id.* at 14). Plaintiff asserts that although she reported pain reduction, she still reported pain levels ranging from six to seven on a scale of one to ten. (*Id.*). Plaintiff's claim of severe pain, she argues, is therefore consistent with the medical

evidence. (*Id.* at 15). Plaintiff also alleges that the ALJ's reliance on her 2014 surgery is misplaced because it occurred outside the alleged disability period. (*Id.* at 13–14).

Second, Plaintiff argues that her conservative course of treatment is not inconsistent with her testimony. (*Id.* at 15). Plaintiff asserts that her choice to wean off narcotics allowed her to find part-time work consistent with her symptoms and therefore bolsters rather than hurts her credibility. (*Id.* at 15–16).

Third, Plaintiff argues that the ALJ's reasoning regarding her activities of daily living ("ADLs") is unsound. (*Id.* at 17). Plaintiff asserts that the ALJ improperly conflated the ability to perform basic ADLs with the ability to maintain full-time employment. (*Id.* at 18–19). She alleges that, contrary to the ALJ's conclusion, her limited ability to perform household chores is consistent with her testimony. (*Id.* at 19). She asserts that her need for frequent rest and assistance is inconsistent with the calculated RFC and would preclude her from sustaining competitive full-time work. (*Id.* at 19–20).

Defendant argues that the ALJ reasonably discounted Plaintiff's subjective statements about the intensity, persistence, and limiting effects of her symptoms. (Doc. 22 at 5). Defendant asserts that Plaintiff's statements were not entirely consistent with the evidence and that her conservative treatment adequately controlled any disabling symptoms. (*Id.* at 6–7). Additionally, Defendant emphasizes that Plaintiff's choice to stop taking medication contradicts her allegations of extreme pain. (*Id.* at 7). Defendant notes that Plaintiff returned to part-time work even though no evidence shows that her condition improved significantly. (*Id.* at 8).

In assessing the credibility of a claimant's testimony regarding subjective pain or the intensity of her symptoms, the ALJ must engage in a two-step analysis. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). First, as a threshold matter, "the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, if the claimant meets the first test,

then "the ALJ 'may not discredit a claimant's testimony of pain and deny disability benefits solely because the degree of pain alleged by the claimant is not supported by objective medical evidence.'" *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (quoting *Bunnell*, 947 F.2d at 346–47). Rather, "unless an ALJ makes a finding of malingering based on affirmative evidence thereof," the ALJ may only find the claimant not credible by making specific findings supported by the record that provide clear and convincing reasons to explain the credibility determination. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 2006) (citing *Smolen*, 80 F.3d at 1283–84).

In rendering a credibility determination, the ALJ may consider several factors, including: "(1) ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (quoting *Smolen*, 80 F.3d at 1284). If the ALJ relies on these factors and his reliance is supported by substantial evidence, the Court "may not engage in second-guessing." *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) (quoting *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002)).

In the ALJ's 2019 decision, the ALJ found that some of Plaintiff's alleged symptoms could reasonably derive from her impairments, but Plaintiff's "statements concerning the intensity, persistence, and limiting effects of these symptoms are not entirely consistent with the medical evidence." (Doc. 16-3 at 20). The ALJ also concluded that Plaintiff's ADLs were inconsistent with her allegations of disabling symptoms. (*Id.* at 21).

In the previous appeal, District Court Judge Rayes found that the ALJ's reliance on Plaintiff's ADLs as a reason to reject her testimony was inadequate. *Castro*, 2021 WL 1085392, at *6. The court in the previous decision reasoned that the ALJ "does not provide any explanation of how these ADLs undermine Plaintiff's testimony." *Id.* The court then

stated that because it rejected the ALJ's reliance on Plaintiff's ADLs, the only remaining justification for rejecting Plaintiff's symptom testimony was objective medical evidence. *Id.* The court noted that, under Ninth Circuit precedent, an ALJ cannot reject a claimant's subjective symptom testimony based only on a lack of objective medical evidence corroborating the severity of the pain. *Id.* (citing *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005)). Accordingly, the court in the previous decision held that the ALJ did not provide sufficient reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony. *Castro*, 2021 WL 1085392, at *6.

In the present appeal, the Court finds that the ALJ provided specific reasons supported by substantial evidence for rejecting Plaintiff's symptom testimony. The ALJ cited to multiple medical reports spanning several years showing that Plaintiff had "few restrictions with generally normal gait, and strength." (Doc. 17 at 13). Plaintiff argues that these physical exams do not speak to her claim of severe pain. An ALJ may, however, consider medical reports showing normal function and lack of muscle atrophy when evaluating a claimant's credibility. *See Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007); *see also Osenbrock v. Apfel*, 240 F.3d 1157, 1166 (9th Cir. 2001). The ALJ permissibly used these reports to infer that Plaintiff's claim of severe, chronic pain is "not entirely consistent" with the medical evidence. (Doc. 17 at 13).

While Plaintiff is correct that some of the cited reports contain conflicting accounts of her pain, it is the ALJ's responsibility to reconcile conflicting medical evidence, not this Court's. *Matney*, 981 F.2d at 1019; *Batson*, 359 F.3d at 1193 ("[I]f evidence exists to support more than one rational interpretation, we must defer to the Commissioner's decision."). The ALJ cited sufficient records demonstrating adequate pain relief to support his rejection of Plaintiff's symptom testimony. For example, the ALJ referenced several pain management records from 2016 to 2018 that report that Plaintiff's medication reduced her pain by thirty to forty percent and allowed her to complete her ADLs. (Doc. 17 at 13, 16). The ALJ's decision is therefore supported by substantial evidence. Additionally, because the ALJ supported his conclusions with substantial evidence, the passing reference

to Plaintiff's 2014 surgery is harmless.

The ALJ also did not err by weighing Plaintiff's "generally conservative treatment" as a factor in evaluating her symptom testimony. Evidence of conservative treatment, such as physical therapy and pain medication, "is sufficient to discount a claimant's testimony regarding severity of an impairment." *Smartt v. Kijakazi*, 53 F.4th 489, 500 (9th Cir. 2022) (quoting *Parra*, 481 F.3d at 751). Moreover, failure to follow prescribed treatment such as pain medication "may be probative of credibility, because a person's normal reaction is to seek relief from pain." *Orn*, 495 F.3d at 638; *see also Tommasetti*, 533 F.3d at 1039. Here, the ALJ pointed out that Plaintiff testified to using conservative treatments such as physical therapy, stretching, heating pads, and ice to manage her pain. (Doc. 17 at 13–15; Doc. 18 at 15). The ALJ also noted that Plaintiff took pain medication for several years, but she stopped taking her medication in January 2020 because she did not want to become dependent on it. (Doc. 17 at 13–14; Doc. 18 at 15). Without medication, Plaintiff began flexible, part-time work from home. (Doc. 17 at 8). The ALJ reasonably inferred that Plaintiff's use of conservative treatment and discontinuation of medication were "not entirely consistent" with her claims of severe pain. (*Id.* at 13).

While Plaintiff argues that she did not want to become dependent on pain medication, it remains that "[i]mpairments that can be controlled effectively with medication are not disabling for the purpose of determining eligibility for SSI benefits." *Warre v. Comm'r Soc. Sec. Admin.*, 439 F.3d 1001, 1006 (9th Cir. 2006). Here, the ALJ cited to several reports that indicate that Plaintiff's medication reduced her pain by thirty to forty percent and permitted her to perform her ADLs. (Doc. 17 at 13, 16). The ALJ found that the reports do not describe any side effects experienced by Plaintiff. (*Id.* at 13). The ALJ permissibly concluded that the record demonstrates Plaintiff's medication generally controlled her disabling symptoms. Therefore, the ALJ did not err in relying on Plaintiff's conservative treatment and discontinuation of medication to reject her symptom testimony.

Lastly, the ALJ reasonably concluded that Plaintiff's ADLs "do not support disability or non-disability per se; however, they do not suggest limitations beyond those

already assessed in this decision." (*Id.* at 15). The ALJ noted that while Plaintiff testified to several limitations such as difficulty sitting for more than one hour and a need for frequent rests, she also was able to perform certain chores and begin part-time work from home. (*Id.* at 8, 15). The ALJ emphasized that Plaintiff reported at several pain management appointments that medication enabled her to perform her regular ADLs. (*Id.* at 15). Plaintiff argues that, in citing this evidence, the ALJ conflated the ability to perform basic ADLs with the ability to maintain full-time employment. (Doc. 18 at 18–19, Doc. 23 at 8). However, an ALJ may use reported ADLs to evaluate credibility, even if the ADLs are not commensurate with the level of activity required to maintain full-time gainful employment. *See Valentine*, 574 F.3d at 693 (reasoning that, although evidence of improvement and light activity did not suggest claimant could return to prior work, the same evidence undermined claimant's testimony regarding the severity of his symptoms). The ALJ therefore did not err in relying on Plaintiff's reported ADLs as a factor in evaluating her symptom testimony.

Lastly, the ALJ did not "reject [Plaintiff's] subjective complaints based solely on a lack of medical evidence to fully corroborate the alleged severity of pain." *Burch*, 400 F.3d at 680. As discussed, the ALJ also permissibly discounted Plaintiff's credibility based on her conservative treatment, discontinuation of pain medication, and reported ADLs. In fact, evidence of conservative treatment alone may have been enough to discount Plaintiff's testimony. *Smartt*, 53 F.4th at 500; *Parra*, 481 F.3d at 751. Even if the ALJ had not evaluated these factors, however, the ALJ did not discount Plaintiff's testimony based on medical evidence that simply *did not corroborate* her claim. Rather, he discounted her testimony based on objective medical evidence that *contradicted* her claim. *Carmickle v. Comm'r Soc. Sec. Admin.*, 533 F.3d 1155, 1161 (9th Cir. 2008) ("Contradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony.").

The Court thus finds that the ALJ provided specific, clear, and convincing reasons supported by substantial evidence for rejecting Plaintiff's subjective testimony.

### B. Medical Opinions

Plaintiff argues that the ALJ failed to provide germane reasons for rejecting PT Goldstein's opinion evidence. (Doc. 18 at 5). PT Goldstein opined that Plaintiff should perform no more than two and a half hours of combined standing and walking in an eight-hour work day and no more than three to five hours of sitting in an eight-hour work day. (*Id.* at 6).

First, Plaintiff argues that the ALJ improperly weighed PT Goldstein's opinions differently than other opinions because many of the practitioners examined Plaintiff only once, but the ALJ did not mention this as a reason to discount any opinion except PT Goldstein's. (*Id.* at 8–9). Second, Plaintiff alleges that PT Goldstein's opinion was consistent with the balance of treatment records and that "the ALJ engaged in picking and choosing from the evidence to create the appearance of a conflict." (*Id.* at 9–10). Third, Plaintiff asserts that the standards used by PT Goldstein are "nearly identical" to SSA regulations and that his opinion contained specific limitations, not a final opinion regarding disability that would be reserved for the Commissioner. (*Id.* at 11–12).

Defendant asserts that the ALJ satisfied the substantial evidence standard because he gave numerous specific, legitimate reasons to discount PT Goldstein's opinion. (Doc. 22 at 2, 5). Specifically, Defendant argues that that PT Goldstein's opinion was inconsistent with the balance of treatment records and Plaintiff's testimony regarding her ADLs. (*Id.* at 3). Defendant also emphasizes that PT Goldstein only saw Plaintiff once for a "vocational," and that any determination on disability made by PT Goldstein is reserved for the Commissioner. (*Id.* at 4–5).

Because Plaintiff filed her application in 2016, pre-2017 SSA regulations apply to her claim. *See Farlow v. Kijakazi*, 53 F.4th 485, 488 & n.3 (9th Cir. 2022). Under these regulations, a physical therapist is a non-acceptable medical source. *See* 20 C.F.R. § 404.1502(a) (not listing physical therapists as an "acceptable medical source"). Because physical therapists are not "acceptable medical sources," the ALJ was only required to give a germane reason for rejecting PT Goldstein's opinion. *See id.* § 404.1527(f) (explaining

that ALJs are not required to consider all factors relevant to acceptable medical sources to reject opinions from non-acceptable medical sources); *see also Cynthia M. v. Comm'r Soc. Sec.*, No. C20-5104 RAJ, 2020 WL 5229447, at *3 (W.D. Wash. Sept. 2, 2020) (citing *Ghanim*, 763 F.3d at 1161). "Inconsistency with medical evidence" is a germane reason reject the opinion of a non-acceptable medical source. *Bayliss v. Barnhart*, 427 F.3d 1211, 1218 (9th Cir. 2005); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).

In the ALJ's 2019 decision, the ALJ assigned PT Goldstein's opinion little weight. (Doc. 16-3 at 21). He stated that "the standards followed by MeasurAbilities LLC . . . are different from the standards" used by the SSA and that "opinions about whether an individual is disabled or unable to work, are reserved to the Commissioner." (*Id.*). On appeal, District Court Judge Rayes found that the ALJ did not provide germane reasons for assigning little weight to PT Goldstein's opinion. *Castro*, 2021 WL 1085392, at *4. The court in the previous decision reasoned that the ALJ did not analyze PT Goldstein's findings or standards nor explain how they might conflict with the other medical evidence or SSA standards. *Id.* at *5. The court in the previous decision also noted that, while final decisions regarding disability are reserved for the Commissioner, PT Goldstein assessed Plaintiff's medical conditions and provided opinions regarding her capabilities. *Id.*

Upon reconsideration, the ALJ again assigned little weight to PT Goldstein's opinion, concluding that it is "inconsistent with the balance of treatment records," which indicate "adequate pain relief" and normal musculoskeletal exams. (Doc. 17 at 16). The ALJ also noted that PT Goldstein evaluated Plaintiff only once. (*Id.*). The ALJ repeated his findings from the 2019 decision that PT Goldstein used different standards than the Social Security Administration and that "opinions about whether an individual is disabled or unable to work, are reserved to the Commissioner." (*Id.*).

In the present appeal, the Court finds that the ALJ provided germane reasons for assigning PT Goldstein's opinion little weight. The ALJ concluded that the balance of medical evidence "support[s] a greater degree of functioning" than PT Goldstein recommended. (*Id.*). To support this finding, the ALJ cited pain management records from

2016 to 2018 that report that Plaintiff's medication allowed her to complete her ADLs. (*Id.*). The ALJ further noted that the records indicate that Plaintiff "generally reported adequate pain relief" and had no side effects from the medication. (*Id.*). The ALJ also cited medical records indicating normal muscle bulk, gait, and strength. (*Id.*). The Ninth Circuit Court of Appeals has held that inconsistency with the medical record is a germane reason for an ALJ to discount the opinion of a non-acceptable medical source such as PT Goldstein. *Bayliss*, 427 F.3d at 1218. The ALJ's rejection of PT Goldstein's opinion is therefore supported by substantial evidence.

Plaintiff argues that the ALJ did not adequately explain how the cited medical evidence and her limited ability to perform ADLs is inconsistent with PT Goldstein's assessment. However, even if an agency "explains its decision with less than ideal clarity," any error is harmless if "the agency's path may reasonably be discerned." *Treichler v. Comm'r Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) (quoting *Alaska Dep't Envtl. Conserv. v. EPA*, 540 U.S. 461, 497 (2004)). Here, the ALJ sufficiently discussed and evaluated evidence that conflicted with PT Goldstein's recommendation throughout the decision. For example, the ALJ explains in step one that Plaintiff reported working a mandatory eight-hour shift on Mondays. (Doc. 17 at 8). This contradicts PT Goldstein's recommendation that Plaintiff limit herself to no more than three to five hours of sitting in an eight-hour work day. (Doc. 18 at 6); *see also Lewis v. Apfel*, 236 F.3d 503, 513–14 (9th Cir. 2001) (finding that the ALJ "discussed and evaluated the evidence," and was not required to do so under any particular heading). Although Plaintiff did not work this shift during the entire alleged disability period, the ALJ found that "there is no evidence of medical improvement" such that a closed period of disability was appropriate. (Doc. 18 at 5). The ALJ discussed and evaluated evidence throughout the decision that suggests PT Goldstein's opinion was inconsistent with the balance of evidence.

Because the ALJ provided germane reasons for assigning little weight to PT Goldstein's opinion, his conclusions regarding evaluation standards and final decisions of the Commissioner do not create reversible error. For similar reasons, the ALJ's mention

that PT Goldstein met with Plaintiff only once is harmless, especially because the ALJ was not required to consider the frequency of examination for a non-acceptable medical source like PT Goldstein. *See* 20 C.F.R. § 404.1527(f).

The Court finds that the ALJ provided germane reasons supported by substantial evidence to assign PT Goldstein's opinion little weight.

### IV. CONCLUSION

For the foregoing reasons,

**IT IS ORDERED** that the ALJ's decision is **AFFIRMED**. The Clerk of Court shall enter judgment accordingly.

Dated this 27th day of February, 2024.

James A. Teilborg
Senior United States District Judge